1

1  UNITED STATES DISTRICT COURT
   EASTERN DISTRICT OF TEXAS
2  BEAUMONT DIVISION

3

   UNITED STATES OF AMERICA  | DOCKET NO. 1:17CR93
4                            |
                             | MAY 11, 2018
5  VS.                       |
                             | 1:34 P.M.
6                            |
   WESTLEY POLLARD, JR.      | BEAUMONT, TEXAS
7
   ----------------------------------------------------------------
8

9          VOLUME 1 OF 1, PAGES 1 THROUGH 16

10      REPORTER'S TRANSCRIPT OF SENTENCING HEARING

11       BEFORE THE HONORABLE MARCIA A. CRONE
              UNITED STATES DISTRICT JUDGE
12
   ----------------------------------------------------------------
13

14 APPEARANCES:

15 FOR THE GOVERNMENT:    CHRISTOPHER TORTORICE
                          U.S. ATTORNEY'S OFFICE
16                        350 MAGNOLIA
                          SUITE 150
17                        BEAUMONT, TEXAS 77701

18 FOR THE DEFENDANT:     JOHN MCELROY
                          FEDERAL DEFENDER'S OFFICE
19                        350 MAGNOLIA
                          SUITE 117
20                        BEAUMONT, TEXAS 77701

21 COURT REPORTER:        TONYA B. JACKSON, RPR-CRR
                          FEDERAL OFFICIAL REPORTER
22                        300 WILLOW, SUITE 239
                          BEAUMONT, TEXAS  77701
23

24
       PROCEEDINGS REPORTED USING COMPUTERIZED STENOTYPE;
25     TRANSCRIPT PRODUCED VIA COMPUTER-AIDED TRANSCRIPTION.

1  [OPEN COURT, DEFENDANT PRESENT.]

2  THE COURT: The first matter this afternoon is
3  No. 1:17CR93, Defendant 1, *United States of America*
4  *versus Westley Pollard, Jr.*

5  MR. TORTORICE: Chris Tortorice for the
6  government. The government is ready to proceed, your
7  Honor.

8  MR. MCELROY: John McElroy for Mr. Pollard.
9  We are ready to proceed, your Honor.

10  THE COURT: All right. If you would please
11  come forward.

12  Have counsel and the defendant read and
13  discussed the presentence report, including any
14  revisions?

15  MR. MCELROY: We have, your Honor.

16  THE COURT: Has counsel fully explained the
17  report to the defendant?

18  MR. MCELROY: I have, your Honor.

19  THE COURT: Mr. Pollard, do you fully
20  understand the presentence report?

21  THE DEFENDANT: I do, your Honor.

22  THE COURT: Does counsel or defendant wish to
23  make any comments, additions, or corrections to the
24  report?

25  MR. MCELROY: No, your Honor.

01:35PM
1  THE COURT: And, Mr. Pollard, does the report
2  adequately cover your background?
3  THE DEFENDANT: I'm sorry, ma'am?
4  THE COURT: Does it adequately cover your
5  background?
6  THE DEFENDANT: Yes, ma'am.
7  THE COURT: Has the government read the
8  report; and does it wish to make any comments, additions,
9  or corrections?
10  MR. TORTORICE: I have; and no comments,
11  additions, or corrections.
12  THE COURT: And no objections were filed by
13  either party; is that correct?
14  MR. MCELROY: That's correct.
15  THE COURT: To the extent the court previously
16  deferred acceptance of the plea agreement, it is now
17  accepted.
18  The court finds the information contained in
19  the presentence report has sufficient indicia of
20  reliability to support its probable accuracy. The court
21  adopts the factual findings, undisputed facts, and
22  guideline applications in the presentence report.
23  Based upon a preponderance of the evidence
24  presented and the facts in the report, while viewing the
25  Sentencing Guidelines as advisory, the court concludes

4

1 that the total offense level is 26, the criminal history
2 level is I, which provides for an advisory guideline
3 range of 63 to 78 months.
4          Does defendant's counsel wish to make any
5 remarks on behalf of the defendant?
6          MR. MCELROY:  I do, your Honor.
7          Mr. Pollard wishes to express his regret for
8 the things that he did and he apologizes to those people
9 who were harmed by his actions and that not only includes
10 the victims of this crime but his family as well.  He
11 understands that it has been a very difficult time for
12 them, and he wishes that he could take back what has
13 happened.  Although he can't, he is here to accept his
14 punishment.  I do want to make a statement that his
15 family, who I've met, are a great support network for
16 Mr. Pollard; and they're going to be very helpful to him
17 in his future while he's on supervised release and things
18 of that nature.
19          Mr. Pollard's history shows that he had a long
20 employment history with ExxonMobil.  Unfortunately that
21 ended in termination; and as the court is aware, there
22 was a lawsuit involved with that and placed him in some
23 financial hardship after several years of litigation.
24          Mr. Pollard also suffers from degenerative
25 disc disease which has resulted in chronic pain over

```
               1   time; and he has taken medications for that, including
               2   pain relievers, muscle relaxers, and antiseizure
               3   medications, which have affected him a little bit in
               4   terms of his personality and mood over time, which
   01:37PM     5   coupled with his employment situation placed him in a
               6   position where he became employed with the rare coin
               7   industry.  And he accepts full responsibility for what he
               8   did to each and every one of those individuals, but I
               9   would point out that the industry itself values these
   01:37PM    10   coins.  They set the book on these coins, and they are
              11   the ones that tell people how much they're valued at.  We
              12   do believe -- although it would be virtually impossible
              13   to get somebody from the industry to come in and testify
              14   to the fact, we believe that the value of the coins is
   01:37PM    15   significantly more than the -- they value the coins at
              16   significantly more than the weight of the precious metals
              17   that are in them.  And, so, these people who have
              18   invested in this industry are in for a rude awakening
              19   when they go to sell their coins at some later date.
   01:38PM    20   That results basically in an inflated loss amount.  We're
              21   not filing any motions objecting to the loss amount or
              22   the restitution.  We would simply suggest that because of
              23   that and the other things that we've listed -- he has no
              24   criminal history -- that the court consider the
   01:38PM    25   recommendation of the probation officer at the low end of
```

6

the guideline range of 63 months to be appropriate in this case as a sentence.

And, further, he would request placement at Beaumont in order to allow for family visitation.

Thank you, your Honor.

THE COURT: All right. Mr. Pollard, do you wish to make a statement?

THE DEFENDANT: Just concluding with what he said, that I'm very sorry for everything that happened; that I'm sorry for the pain it has brought to my victims, to my family members, and to my church; and that I'm here to accept my punishment.

THE COURT: All right. Does the attorney for the government wish to make any remarks?

MR. TORTORICE: Yes, your Honor. I apologize. I'm having some voice issues today.

THE COURT: Okay.

MR. TORTORICE: So, your Honor, there's I guess a number of factors at play here. On one hand, Mr. Pollard eventually did cooperate with this investigation related to his own conduct. It took us awhile to get there but he eventually did and, so, I think that there's -- you know, in terms of a guideline sentence, that that should be maybe factored in. But there's also another couple of issues at play.

7

01:39PM

1  No. 1, at least one of the victims -- and just
2  to make sure the court is aware, one of the victims, at
3  least his attorney is here and would like to address the
4  court at the appropriate time.
5  THE COURT:  All right.
6  MR. TORTORICE:  But that particular victim,
7  who sustained a 4-million-dollar loss in this, had more
8  than just an arm's-length type business relationship with
9  Mr. Pollard.  They had a very close relationship, a

01:40PM

10  very -- almost like a father/son relationship.  Maybe not
11  quite that but something approaching a very close
12  relationship of affection.  And while that clearly is not
13  a position of trust pursuant to the guidelines, I do
14  think the court should be aware of that and consider that

01:40PM

15  he abused this -- the closeness of that relationship in
16  perpetrating this fraud.
17  The second point about the value of the coins,
18  I tend to agree that they're probably overvalued; but the
19  person selling these overvalued coins to the investors is

01:40PM

20  the defendant.  So, it's kind of hard to accept that that
21  should mitigate because they're overvalued.  So, either
22  he knows they're overvalued and is selling overvalued
23  coins to people or he doesn't and was intentionally
24  ripping off this amount of money.  Either way, I don't

01:41PM

25  think it particularly matters in terms of what's an

appropriate sentence. I think it kind of negates. So, I think that the loss amount is accurate in terms of his own personal culpability as opposed to this "Well, it's not really worth that." So, I think those factors kind of argue for a middle-of-the-guideline sentence, in the government's perspective.

THE COURT: All right. Does any victim of the offense wish to make a statement?

MR. HOLLISTER: Yes, your Honor.

THE COURT: Please come forward.

MR. TORTORICE: Would you like him at the podium or here?

THE COURT: You can be at the podium.

MR. HOLLISTER: All right. Good afternoon, your Honor. May it please the court.

My name is Buck Hollister and I'm an attorney representing one of the victims, Keith Moe, and he wasn't feeling very well and asked me to actually attend today's proceedings to give statements on his behalf. If you would give me the courtesy, I just would like to take a couple of minutes to make those statements to the court.

THE COURT: Okay.

MR. HOLLISTER: My client has been financially and emotionally devastated by the actions of what happened. He basically went to purchase several million

dollar's worth of numismatic coins and now basically they're all gone and he has no way to actually go and recoup that because he's nearly 80 years old, he's in failing health, and he has been under so much stress that as of April last year, he actually suffered a massive heart attack and has been recovering since that point. He also wanted to make sure that he was able to go and use this money basically for his own grandchildren's college education, and he's now no longer able to do that. And now, because he is in an older state and he only has so much money, his wife now is having to go out and actually look for additional employment as well.

The theft of his coins also impacts his abilities to actually be able to go and set up long-term care costs and then also his own health care costs. Yes, there is Medicare; but at the same time, he was planning on using this money to basically go and pay for that.

I guess my client -- I'd like to note for the court -- is a very deeply religious man; and that's, building off of what the prosecutor said a little bit earlier today, how he and Westley Pollard, Jr., actually connected. There was a close bond of trust. When my client first met Westley Pollard, Jr., he saw someone that was actually trying to go and climb a ladder of success, care for his family; and being an older

1  individual and actually an executive of 3M, which is a
2  publicly traded company, he thought he'd go and try to
3  help him out.  So, he converted some of his retirement
4  portfolio over to basically purchasing numismatic coins
5  with the thought that, okay, Westley Pollard, Jr., will
6  earn commissions and at the same time be able to go and
7  care for his family.  Then, much to his chagrin and
8  disappointment, he never actually got those coins back
9  after going and placing his trust with Westley; and he
10 now feels betrayed.
11         So, then fast-forward back up to this year,
12 basically my client has saw that Westley Pollard, Jr.,
13 has acknowledged what he has actually done and
14 appreciates that.  And this is the most important point
15 to my client, is that basically, being a religious man,
16 it seems like Westley Pollard, Jr., with the statements
17 he's made here today and then actually trying to help on
18 the civil side -- because there is a civil case going on
19 against the coin firms as well -- that basically he feels
20 that Westley has atoned for his sins and actually
21 acknowledged it.  And from Keith Moe's standpoint, that's
22 the most important point, that you acknowledge your
23 mistakes in the past and that you're willing to actually
24 go and step up and basically take corrective actions and
25 so forth.  So, my client ultimately asks the court here

```
01:44PM

01:45PM




01:45PM



01:45PM




01:45PM
```

1  today, when going through the Sentencing Guidelines, not
2  only to look at the -- not only the financial impact and
3  emotional impact it's done to the family but also the
4  corrective action that Westley Pollard, Jr., has taken;
5  and by the fact that he's taken that corrective action,
6  it shows that he almost deserves like a second chance.
7  So, he asks that you take the totality of the
8  circumstances into account when deciding how long to
9  sentence Mr. Pollard here today.
10             Thank you for your time, your Honor.
11             THE COURT:  Okay.  Any other victims wish to
12  make a statement?
13             MR. TORTORICE:  No, your Honor.
14             THE COURT:  All right.  Does counsel know of
15  any reason why sentence should not be imposed at this
16  time?
17             MR. MCELROY:  No, your Honor.
18             MR. TORTORICE:  None from the government.
19             THE COURT:  Pursuant to the Sentencing Reform
20  Act of 1984, having considered the factors noted in
21  18 U.S.C., Section 3553(a), and after having consulted
22  the advisory Sentencing Guidelines, it is the judgment of
23  the court that the defendant, Westley Pollard, Jr., is
24  hereby committed to the custody of the Bureau of Prisons
25  to be imprisoned for 63 months on Count 1 of the

1  indictment.

2          While incarcerated, it is recommended that the
3  defendant participate in the Inmate Financial
4  Responsibility Program at a rate determined by Bureau of
5  Prisons staff in accordance with the requirements of the
6  Inmate Financial Responsibility Program.

7          It is further ordered the defendant is to pay
8  restitution totaling $5,480,000 to the victims and in the
9  amounts listed in the "Restitution" section of the
10 presentence report, which is due and payable immediately.

11         The court finds the defendant does not have
12 the ability to pay a fine.  The court will waive the fine
13 in this case.

14         It is ordered the defendant shall pay the
15 United States a special assessment of $100 which is due
16 and payable immediately.

17         Upon release from imprisonment, the defendant
18 shall be on supervised release for a term of 3 years.
19 Within 72 hours of release from the custody of the Bureau
20 of Prisons, the defendant shall report in person to the
21 probation office in the district to which the defendant
22 is released.

23         The defendant shall not commit another
24 federal, state, or local crime and shall comply with the
25 standard conditions that have been adopted by this court.

13

1  In addition, the defendant must comply with the mandatory
2  and special conditions and instructions that have been
3  set forth in the defendant's presentence report.
4          The court finds this to be a reasonable
5  sentence in view of the nature and circumstances of the
6  offense entailing the defendant's commission of mail
7  fraud; his soliciting coins from four individuals to whom
8  he had previously sold coins (one of whom was a
9  vulnerable victim); his telling them that their coin
10 collections had increased in value and that he could sell
11 the coins at significantly higher prices than they had
12 paid; his offering to have the coins regraded to a higher
13 grade which would increase their value; his obtaining the
14 coin collections after directing the individuals to send
15 them to him; his selling the coins to pawnshops or other
16 coin dealers without the individual's consent and using
17 the proceeds from the sales for his personal benefit,
18 which resulted in substantial financial hardship to the
19 victims; and his responsibility for a total loss of
20 $5,480,000.  It will serve as just punishment, promote
21 respect for the law, and deter future violations of the
22 law.
23         Although the court finds the guideline
24 calculations announced at the sentencing hearing to be
25 correct, to the extent they were incorrectly calculated,

14

the court would have imposed the same sentence without regard to the applicable guideline range in light of the factors set forth in 18 U.S.C., Section 3553(a).

What happened to the proceeds?  I mean, this was a lot of money.  Was nothing recovered?

MR. TORTORICE:  Well, your Honor, they were sold at pawnshops for essentially the weight of the metal, which is far less, you know, a fraction of what the victims paid, because they're paying for these what they thought were collectibles.

THE COURT:  I understand.  Collectible coins, I know.  There's a lot of litigation over that.

MR. TORTORICE:  Right.  So, this $5.4 million worth of coins might have only netted a million or less; and to the best of the government's ability, we -- there was really very little, if anything, to recover.

THE COURT:  Okay.  A million dollars still is substantial.

MR. TORTORICE:  Well, it is a substantial amount of money.  I mean, I can tell you from our financial analysis and our work on that, we looked and it -- unless it's moved somewhere that we were unable to see it.

THE COURT:  Okay.  All right.

You have a right to appeal your conviction if

you believe that your guilty plea was somehow unlawful or involuntary or if there was some other fundamental defect in the proceedings that was not waived by your guilty plea.  You have a statutory right to appeal your sentence under certain circumstances, particularly if you think the sentence is contrary to law.  A defendant, however, may waive those rights as part of a plea agreement and you've entered into a plea agreement which waives certain rights to appeal your conviction and sentence.

With the exception of the reservation of the right to appeal on specified grounds set forth in the plea agreement, you've waived any appeal, including collateral appeal, of any error which may have occurred surrounding the substance, procedure, or form of the conviction and sentence in this case.  Such waivers are generally enforceable; but if you believe the waiver is unenforceable, you can present that theory to the appellate court.

MR. TORTORICE:  With few exceptions, any notice of appeal must be filed within 14 days of judgment being entered in your case.  If you're unable to pay the cost of an appeal, you may apply for leave to appeal *in forma pauperis*.  If you so request, the clerk of the court will prepare and file a notice of appeal on your behalf.

16

1           The presentence report is made part of the
2   record and is placed under seal except counsel for the
3   government and defense may have access to it for purposes
4   of appeal.
5           Were there any other counts?
6           MR. TORTORICE:  Yes, your Honor.  We would
7   move to dismiss the remaining counts of the indictment.
8           THE COURT:  That's granted.
9           And then the defendant needs to surrender
10  on -- before 2:00 o'clock on June 25th, 2018, to the
11  marshal for -- and then serve his sentence.
12          And I'll recommend the Beaumont facility.
13          MR. MCELROY:  Thank you, your Honor.
14          THE COURT:  If there's nothing further, then
15  you're excused.
16          (Proceedings adjourned, 1:49 p.m.)
17
18  COURT REPORTER'S CERTIFICATION
19          I HEREBY CERTIFY THAT ON THIS DATE,
20  SEPTEMBER 10, 2018, THE FOREGOING IS A CORRECT TRANSCRIPT
21  FROM THE RECORD OF PROCEEDINGS.
22
23
24              ___/s/_____
                TONYA JACKSON, RPR-CRR
25